BRYAN SCHRODER
United States Attorney

JAMES KLUGMAN
Assistant U.S. Attorney
Federal Building & U.S. Courthouse
222 West Seventh Avenue, #9, Room 253
Anchorage, Alaska 99513-7567
Phone: (907) 271-5071
Fax: (907) 271-1500
Email: james.klugman@usdoj.gov

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No. 3:18-cr-00130-TMB-MMS |
| Plaintiff, | ) ) ) | |
| vs. | ) ) ) | |
| MARKANTHONY DELEON SAPALASAN, | ) ) ) ) | |
| Defendant. | ) ) | |

## GOVERNMENT'S TRIAL BRIEF

The United States of America, through Assistant United States Attorney James Klugman, hereby files this Trial Brief in preparation for trial scheduled to begin on before this Court on April 22, 2019.

//

//

# 1. THE CASE AGAINST SAPALASAN

## 1.1 Charges

Sapalasan has been indicted for two felony crimes. Count 1 charges possession of more than 50 grams of methamphetamine with intent to distribute in violation of 21 U.S.C. § 841(a)(1). Count 2 charges possession a firearm in furtherance of a drug trafficking crime (i.e. the offense charged in Count 1) in violation of 18 U.S.C. 924(c).

## 1.2 Factual background

On the early morning of August 25, 2018, APD received a report of a homicide at an apartment on 88th Avenue in Jewel Lake. Responding officers Tae Yoon and Jonathan Behning saw Sapalasan and second man (later identified as Brian Johnson) walking away from the apartment. Sapalasan was carrying a red backpack. During their contact with Sapalasan, the officers noticed a pistol protruding from his pants pocket. Officer Yoon removed the pistol, which was a Glock 19 9mm. Sapalasan was transported to APD to speak with detectives about the homicide. Officer Yoon retained possession of Sapalasan's backpack for the rest of his shift, then conducted an inventory search prior to placing the backpack into evidence for safekeeping. During this inventory search, Officer Yoon found what appeared to be methamphetamine. He applied for a warrant to search the backpack. This search eventually uncovered a letter addressed to "Mark Sabalasan"), a phone, two SIM cards, a scale, multiple plastic baggies, 9mm ammunition, firearms magazines, and suspected methamphetamines. A DEA chemist concluded that this

substance was in fact methamphetamines, with a net weight of approximately 129 grams. The phone contained a number of text messages arranging narcotics sales.

### 1.3 Witnesses and Case Presentation

The government plans to call some or all of the following witnesses:

- APD Officer Tae Yoon: Officer Yoon responded to the homicide call, contacted Sapalasan, saw the pistol in his pocket, and performed the search of his backpack. This encounter was captured on Officer Yoon's in-car video.

- APD Officer Johnathan Behning: Officer Behning was present with Officer Yoon and was the first to observe a pistol in Sapalasan's pocket.

- APD Detective James Estes: Detective Estes executed the search warrant on Sapalasan's backpack, which led to the discovery of the methamphetamines.

- APD Technician Angela Worthy: Worthy performed a forensic extraction of the cell phone recovered from Sapalasan's backpack.

- ATF Special Agent Sarah Foreman (testimony described below in section 2.3.1).

Absent extraordinary and unforeseen complications, the government anticipates that it will be able to present its case in no more than two trial days.

//

//

## 2. LEGAL AND EVIDENTIARY ISSUES

### 2.1 Elements of the charged offenses

In order to prove a violation of 21 U.S.C. § 841(a)(1) as charged in Count 1, the Government must prove that the defendant knowingly possessed methamphetamine, and that he did so with an intent to distribute it to another person. The government will also ask the jury to return a special finding as to whether or not the evidence establishes that the amount of methamphetamine was more than 50 grams.

In order to prove a violation of 18 U.S.C. § 924(c) as charged in Count 2, the government must prove that the defendant committed a drug trafficking crime (here, the offense charged in Count 1), that he knowingly possessed a firearm, and that he did so in furtherance of the drug trafficking crime.

### 2.2 Stipulations

Through counsel, Sapalasan has agreed to stipulate to the admissibility of the lab report prepared by the DEA in this case. Sapalasan has also agreed to stipulate to the chain of custody for the physical evidence that government will introduce. The parties will present formal written stipulations reflecting this agreement which can be presented to the jury.

### 2.3 Language

Sapalasan has used the services of a Tagalog interpreter at prior court hearings. The government certainly has no objections to his continuing to do so for the trial.

However, the government does intend to elicit testimony from the officers who interacted with Sapalasan that they were able to communicate with him in English.

If Sapalasan elects to testify, the government requests that he elect whether to respond directly in English himself or through an interpreter, rather than attempting to switch between the two, in order to facilitate a more comprehensible examination.

### 2.3 Expert testimony Special Agent Sarah Foreman

Sarah Foreman is a Special Agent with Bureau of Alcohol, Tobacco, Firearms, and Explosives. She is familiar with the results of the investigation of this case.

The government intends to ask Special Agent Foreman to give expert testimony based on her familiarity with firearms and her experience investigating violations of federal firearms and controlled substances laws. Specifically, the government expects that Special Agent Foreman will describe modern semi-automatic pistols, and will explain generally, a particular weapon is only capable of chambering and firing a particular type of ammunition. She will explain that the pistol seized from Sapalasan was chambered for 9mm Luger (also called 9mm Parabellum) ammunition, and that the ammunition found in the backpack was compatible with this firearm.

Special Agent Foreman will also testify that drug traffickers in Southcentral Alaska frequently arrange drug transactions using smartphones. She will explain that buyers and sellers frequently use codewords in an attempt to conceal the true nature of the transactions from law enforcement. She will explain that the words used in the text

messages on Sapalasan's phone – the terms "shirt", "ball", "basketball", and "half" – are common codewords used to refer to specific quantities of controlled substances.

Special Agent Foreman will testify that drug trafficking is financially lucrative, that this fact makes traffickers are appealing targets for theft or robbery, and that this appeal is heightened by a perception that traffickers are unlikely to involve the police due to the illegal nature of their own activity. She will explain that in order to protect against these risks, drug traffickers regularly carry firearms. She will also explain that even when drug traffickers do not to brandish or display their firearms, the knowledge that they might be armed serves as a deterrent, and increases the effectiveness of the trafficking operation.

Special Agent Foreman will explain that the methamphetamine seized in this case represents a thousand or more individual doses and would have costs thousands of dollars.

The government does not, of course, intend to ask Special Agent Foreman to offer an opinion as to whether Sapalasan knowingly possessed the methamphetamine or whether he intended to distribute it. Fed. R. Evid. 704(b).

**2.4 Discovery**

The government has provided the defendant with requested discovery in according with Fed. R. Crim. P. 16. The government will arrange for the viewing of any physical evidence prior to trial upon request. As of the time of filing, the defendant has not provided the government with any discovery. Should the defendant seek to present any

evidence that should have been disclosed in discovery, the government will seek a continuance or preclusion of the evidence.

RESPECTFULLY SUBMITTED April 8, 2019, at Anchorage, Alaska.

BRYAN SCHRODER
United States Attorney

s/James Klugman
JAMES KLUGMAN
Assistant U.S. Attorney

**CERTIFICATE OF SERVICE**

I hereby certify that on April 8th, 2019, a
true and correct copy of the foregoing was
served electronically on:

Darrel J. Gardner

s/ James Klugman
Office of the U.S. Attorney