# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 3:18-cr-00130-TMB-MMS |
| Plaintiff, | |
| v. | **ORDER ON DEFENDANT'S MOTION FOR NEW TRIAL (DKT. 252)** |
| MARKANTHONY DELEON SAPALASAN, | |
| Defendant. | |

## I. INTRODUCTION

The matter comes before the Court on the Defendant Markanthony Deleon Sapalasan's Motion for New Trial (the "Motion").[1] The United States opposes the Motion.[2] The matter is fully briefed, and the Court finds that the Motion is suitable for disposition without oral argument. For the reasons discussed below, the Motion at Docket 252 is **DENIED**.

## II. BACKGROUND

On October 17, 2018, the Grand Jury handed down an Indictment charging Sapalasan with Possession of Actual Methamphetamine, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A) (Count 1), and Possession of a Firearm in Furtherance of a Federal Drug Trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A) (Count 2).[3] Following a mistrial, a second trial commenced on July 19, 2021, and concluded on July 22, 2021.[4] The Jury found Sapalasan guilty on Counts 1 and 2 and

---

[1] Dkt. 252 (Motion).

[2] Dkts. 253 (Opposition); 254 (Supplement); 254-1 (Search Warrant & Affidavit).

[3] Dkts. 2 (Indictment).

[4] Dkts. 207–210, 219, 242–45 (Minute Entries).

1

found that Sapalasan possessed an amount of actual methamphetamine that equaled or exceed 50 grams.[5] Counsel[6] polled jurors, who confirmed the verdict was unanimous.

After the Jury delivered its verdict, Clerk of Court staff discovered that Search Warrant No. 3AN18-254SW and the accompanying affidavit by Anchorage Police Officer Tae Yoon (collectively, the "Search Warrant"), not admitted into evidence, were mistakenly included with evidence provided to the Jury during deliberations. After realizing the error, the Court recalled the Jury. Jurors were sworn, and, on the record, the Court polled jurors individually, in the presence of counsel and Sapalasan, about whether they or their fellow jurors had seen the Search Warrant and whether jurors discussed the contents of the Search Warrant during deliberations. The Court permitted counsel to ask follow-up questions. All but one juror could not recall reading the Search Warrant, and most jurors did not recall seeing the Search Warrant at all. Following the jury poll, Sapalasan made an oral motion for a mistrial.[7] The Court ordered Sapalasan to file a motion within 14 days.[8]

A. Motion for New Trial

Sapalasan now moves for a new trial under Federal Rule of Criminal Procedure ("Rule") 33, arguing that a "new trial is in the interest of justice because his Sixth Amendment right to a trial by jury was violated when jurors were provided with evidence not admitted at trial for deliberation."[9] Sapalasan notes that the Search Warrant was not admitted into evidence and was

---

[5] Dkt. 246 (Jury Verdict).

[6] "Counsel" refers collectively to Government and defense counsel.

[7] Dkt. 245.

[8] *Id.*

[9] Dkt. 252 at 1.

2

mistakenly included in evidence provided to the Jury for deliberations.[10] He argues that "[i]ntroducing extrinsic evidence to jurors entitles [him] to a retrial unless the prosecution can prove the error was harmless beyond a reasonable doubt."[11]

Sapalasan argues "it cannot be shown beyond a reasonable doubt that the [S]earch [W]arrant had no effect on jury deliberations and the subsequent verdict."[12] Sapalasan notes that multiple jurors acknowledged that they saw or may have seen the Search Warrant, and one juror recalled reading at least some of the Search Warrant's contents.[13] Sapalasan argues that it is reasonably possible that even one juror considered the extrinsic evidence, thus, tainting the verdict.[14] He asserts because the Court cannot measure the impact of consideration of the Search Warrant or the extent of the prejudiced introduced in deliberations, a new trial is warranted.[15]

B. Government's Opposition

The United States opposes the Motion, arguing that the circumstances do not a warrant a new trial.[16] The United States describes Government Trial Exhibit 19 ("Exhibit 19") as "consist[ing] of the cardboard evidence box that the Anchorage Police Department [("APD")] used to store [Sapalasan's] backpack and its contents."[17] The United States notes Exhibit 19 was

---

[10] *Id.* at 2.

[11] *Id.* (citing *Chapman v. California*, 386 U.S. 18, 24 (1967); *Fontaine v. California*, 390 U.S. 593 (1968)).

[12] *Id.*

[13] *Id.*

[14] *Id.*

[15] *Id.* at 2–3 (citing, *inter alia*, *United States v. Vasquez*, 597 F.2d 192, 194 (9th Cir. 1979)).

[16] Dkt. 253 at 1.

[17] *Id.* at 1–2.

admitted without objection during both of Sapalasan's trials and that "defense counsel examined the contents of [Exhibit 19] during the first trial."[18] The United States acknowledges that the box also contained a copy of the Search Warrant, including the supporting affidavit authorizing the seizure of Sapalasan's backpack.[19] In the affidavit, authored by Officer Yoon, Officer Yoon summarizes his contact with Sapalasan on August 25, 2018.[20] However, when the jurors were questioned following the verdict, the United States notes that: (1) 10 of the 12 jurors denied seeing the Search Warrant; (2) one juror described seeing papers in the evidence box but denied examining the contents; and (3) one juror described reviewing the Search Warrant only to the extent that the juror could identify the document was a warrant and Officer Yoon's name was on it but denied that the Search Warrant and its contents were discussed during deliberations.[21]

The United States argues that there is no reasonable possibility that the Search Warrant could have affected the Jury's verdict.[22] First, the United States argues, the Search Warrant "was duplicative or cumulative of the evidence properly admitted."[23] The United States notes that it is undisputed that law enforcement obtained a search warrant to search Sapalasan's backpack and this fact was introduced during trial.[24] Further, the United States argues that Officer Yoon's affidavit accompanying the Search Warrant "contains the same substantive information that was

---

[18] *Id.* at 2.

[19] *Id.*

[20] *Id.*

[21] *Id.*

[22] *Id.* at 2–3 (citing *Mario v. Vasquez*, 812 F.2d 499, 504 (9th Cir. 1987)).

[23] *Id.* at 3 (citing *Hughes v. Borg*, 898 F.2d 695, 700 (9th Cir. 1990)).

[24] *Id.*

4

brought out through his trial testimony."²⁵ Additionally, the interaction between Officer Yoon and Sapalasan was "largely captured on video, which was also introduced into evidence."²⁶ Accordingly, the United States argues, even if jurors "had carefully perused every page of the [S]earch [W]arrant, there is no additional information that they would have gleaned beyond what was properly admitted at trial" and "the duplicative and cumulative nature of the evidence at issue would show that any error would have been harmless."²⁷

Second, the United States argues that the evidence introduced at trial against Sapalasan "was so overwhelming" that the Court may conclude "that the judgment was not substantially swayed by the error."²⁸ Specifically, the United States notes that it put on evidence that: (1) Sapalasan's backpack contained over 100 grams of methamphetamine, a drug ledger, dozens of baggies, and a scale; (2) Sapalasan was caught wearing the backpack and with a gun in his pocket; (3) Sapalasan admitted to possessing the backpack and gun; (4) Sapalasan admitted that the hundreds of messages coordinating drug sales were his communications; (5) Sapalasan admitted to selling drugs and to lying under oath at his first trial; and (6) one of Sapalasan's former customers testified about buying large amounts of drugs from Sapalasan on several occasions and this testimony was corroborated by the evidence admitted at trial.²⁹ The United States argues that the improperly included Search Warrant "simply reflected other evidence that was properly before the jury," and there is no "realistic possibility" that the Search Warrant "played any meaningful

---

²⁵ *Id.* at 3–4.

²⁶ *Id.* at 4.

²⁷ *Id.*

²⁸ *Id.* (internal quotation marks and citations omitted)).

²⁹ *Id.*

5

role in the jury's deliberations or decisions."[30] The United States also filed a Supplement, which includes a copy of the Search Warrant.[31]

### III.  LEGAL STANDARD

Under Rule 33, "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires."[32]

### IV.  ANALYSIS

The United States has successfully shown beyond a reasonable doubt that the Search Warrant, which was improperly provided to the Jury, did not contribute to the verdict. Accordingly, Sapalasan's Motion is **DENIED**.

  A. *Jury Consideration of Extrinsic Evidence*

The Sixth Amendment guarantees a criminal defendant the right to a fair trial, and one of the "touchstone[s] of a fair trial is an impartial trier of fact—a jury capable and willing to decide the case solely on the evidence before it."[33] A defendant is entitled to a new trial "if there existed a

---

[30] *Id.* at 4–5.

[31] Dkts. 254 at 1; 254-1 at 1–8.

[32] Fed. R. Crim P. 33(a).

[33] *Fields v. Brown*, 503 F.3d 755, 766 (9th Cir. 2007) (internal citation and quotation marks omitted); *see id.* at 779 ("[E]vidence developed against a defendant must come from the witness stand.").

reasonable possibility that . . . extrinsic material could have affected the verdict."[34] A trial judge is in a uniquely qualified position to weigh the effects of the introduction of extrinsic evidence.[35]

Courts weigh several factors "to determine whether the jury's exposure to extraneous information necessitates a new trial."[36] These factors include:

> (1) whether the material was actually received, and, if so, how; (2) the length of time it was available to the jury; (3) the extent to which the jurors discussed and considered it; (4) whether the material was introduced before a verdict was reached, and, if so, at what point in the deliberations; (5) any other matters which may bear on the issue of the reasonable possibility of whether the material affected the verdict; (6) whether extraneous information was otherwise admissible or merely cumulative of other evidence adduced at trial; (7) whether a curative instruction was given or some other step taken to ameliorate the prejudice; (8) the trial context; and (9) whether the evidence was insufficiently prejudicial given the issues and evidence in the case.[37]

The ultimate question "is whether it can be concluded beyond a reasonable doubt that extrinsic evidence did not contribute to the verdict"; therefore, "no one of these factors is dispositive."[38]

## B. The Extrinsic Evidence Did Not Contribute to the Verdict

Here, applying the factors above extrinsic evidence did not affect the verdict in Sapalasan's case. The Search Warrant went back with the Jury in the box containing Sapalasan's backpack (Exhibit 19), the box was with jurors during their entire deliberations, and the error discovered

---

[34] *Vasquez*, 597 F.2d at 193; *United States v. Lopez-Martinez*, 543 F.3d 509, 517 (9th Cir. 2008) (quoting *United States v. Saya*, 247 F.3d 929, 937 (9th Cir. 2001)).

[35] *See Saya*, 247 F.3d at 937 ("Because of the trial judge's unique opportunity to observe the jurors during trial, to hear the defenses asserted, and to hear the evidence, the judge's conclusion about the effect of the alleged misconduct deserves substantial weight.") (internal quotations omitted).

[36] *Saya*, 247 F.3d at 937.

[37] *United States v. Prime*, 431 F.3d 1147,1157 (9th Cir. 2005) (formatting altered) (quoting *Dickson v. Sullivan*, 849 F.2d 403, 406 (9th Cir. 1988); *Jefferies v. Wood*, 14 F.3d 1484, 1491–92 (9th Cir. 1997).

[38] *Dickson*, 849 F.2d at 406 (internal quotation marks and citations omitted).

only after the Jury reached its verdict. Therefore, no curative instruction was given. However, based on the sworn testimony of jurors polled after the verdict, it does not appear the Jury discussed or considered the Search Warrant. When the Court polled the Jury, ten jurors testified they had not viewed any papers or documents in the Exhibit 19 box. One juror testified to seeing papers but not reviewing the contents. Only one juror testified to viewing the contents of the Search Warrant at all, and this juror stated that she had reviewed the Search Warrant only to the extent that she saw it was a warrant with Officer Yoon's name on it. Therefore, it appears the majority of the jurors did not "receive" the Search Warrant at all.[39] The jurors independently and unanimously stated that the Search Warrant did not enter into their deliberations.[40]

The fifth and sixth factors against the necessity of a new trial considering the nature of the Search Warrant, the evidence admitted at trial, and that the Search Warrant contents did not factor into the Jury's deliberations or verdict.[41] As the United States correctly points out, the extraneous material contained in the Search Warrant was duplicative of information and argument properly before the Jury.[42] Specifically, the Search Warrant signed by Officer Yoon sought to search a "red

---

[39] *See United States v. Lopez-Martinez*, 543 F.3d 509, 517 (9th Cir. 2008) ("If, as the deliberating jurors all testified, none of them even saw the paper with the alternative jury instructions on it, it is logically impossible that this extrinsic evidence affected their verdict."); *see also United States v. LaForest*, No. SACR 16-00029-CJC, 2018 WL 9802100, at *9 (C.D. Cal. Feb. 22, 2018) ("When a defendant challenges a juror's reception of extrinsic information, he must, as a threshold matter, make a showing that the juror actually received–*i.e.*, either saw or heard–the information.") (citation, internal quotation marks, and alterations omitted).

[40] *See United States v. Walton*, 403 F. Supp. 3d 839, 843–50 (C.D. Cal 2018) (denying motion for new trial where jury improperly viewed demonstrative charts not admitted into evidence and had access to, but did not view, defendants' state criminal records; the court admonished the jury to disregard the charts), *aff'd* --F. App'x--, 2021 WL 3615426 (Aug. 16, 2021).

[41] *See Saya*, 247 F.3d at 938; *Prime*, 431 F.3d at 1157 ("The fifth factor includes consideration of the nature of the extrinsic evidence.").

[42] *See Hughes*, 898 F.2d at 699, 701 (holding that although the jury was improperly allowed to consider a search warrant affidavit and police report that had not been admitted into evidence, the

8

backpack seized from . . . Sapalasan" under suspicion that the backpack contained "drugs, illegal controlled substances, drug paraphernalia (baggies, scales, pipes), records showing controlled substance transactions, firearms, ammunition, US currency" and a cell phone.[43] Office Yoon's affidavit described his August 25, 2018, encounter with Sapalasan, which lead to Sapalasan being transported to the APD station for questioning and the discovery of a firearm in Sapalasan's pants pocket.[44] Officer Yoon further described conducting a search of Sapalasan's backpack pursuant to APD policy to ensure there was no hazardous material, paraphernalia, or weapons prior to logging the backpack into APD "Property and Evidence."[45] It was during this search that Officer Yoon observed that the backpack held small plastic baggies containing a substance which appeared to be methamphetamine and two firearm magazines, among other things.[46]

At trial, Officer Yoon took the stand and testified to the entire encounter with Sapalasan in detail, his preliminary search of Sapalasan's backpack, and his subsequent application for a search warrant.[47] Sapalasan also took the stand and corroborated much of Officer Yoon's testimony, including the initial encounter with Officer Yoon and Sapalasan's ownership of the backpack.[48]

---

police report evidence was duplicative of trial testimony and the other evidence adduced at trial was so overwhelming that the jury was not swayed by consideration of the affidavit); *Prime*, 431 F.3d at 1157; *LaForest*, No. SACR 16-00029-CJC, 2018 WL 9802100, at *6–8.

[43] Dkt. 254-1 at 1.

[44] *Id.* at 5–6.

[45] *Id.* at 6.

[46] *Id.*

[47] Dkt. 257 at 2:6–34:19, 34:24–35:6 (Day 2 Excerpt. Trial Tr.).

[48] Dkts. 258 at 2:20–25, 3:5–7, 3:12–5:17, 5:22–6:3 (Day 3 Excerpt. Trial Tr.); 259 at 2:15–16 (Day 4 Excerpt. Trial Tr.).

Further, Sapalasan's backpack with the contents was admitted into evidence as Exhibit 19.[49] Thus, there was no reasonable possibility that the Search Warrant could have affected the verdict because the contents were merely cumulative of evidence properly admitted at trial.

"Also of consequence in determining whether the introduction of extraneous information constituted prejudice is the amount and strength of the government's evidence against" Sapalasan.[50] As discussed, jurors heard evidence over the course of four days, which included: (1) Sapalasan's backpack contained ammunition, over 100 grams of methamphetamine in baggies, and drug paraphernalia[51]; (2) Sapalasan was caught wearing the backpack and with a gun in his pocket[52]; (3) Sapalasan admitted to possessing the backpack and gun[53]; (4) Sapalasan admitted that the hundreds of messages coordinating drug sales were his communications[54]; (5) Sapalasan admitted to selling drugs[55]; and (6) one of Sapalasan's customers testified about buying drugs from Sapalasan on several occasions, seeing Sapalasan carry a firearm, and being intimidated by Sapalasan when she failed to pay her drug debts.[56] Further, the Jury viewed a video from Officer

---

[49] Dkt. 257 20:6–21:7.

[50] *Saya*, 247 F.3d at 939; *United States v. Lampkin*, No. 3:15-cr-00005-SLG, 2018 WL 10700934, at *3, n.14 (D. Alaska Jan. 24, 2018).

[51] Dkts. 257 at 31:12–23; 258 at 2:6–15, 6:8–10; 259 at 14:5–12.

[52] Dkts. 257 at 7:1–4, 14:6–16:15, 28:2–25; 258 at 3:12–4:14.

[53] Dkts. 258 at 2:6–8, 2:20–25, 3:5–7, 4:5–18, 5:22–6:3, 8:8–23; 259 at 2:6–16.

[54] Dkt. 259 at 2:21–6:13, 7:15–12:25.

[55] Dkts. 258 at 6:15–7:20, 7:25–8:3, 9:3–10:2; 259 at 6:4–7:7.

[56] Dkt. 257 at 35:11–13, 35:19–36:10, 36:18–38:5, 38:10–39:10, 39:15–41:2, 41:7–42:4, 42:9–44:23, 45:3–10, 45:15–46:21, 47:1–9.

Yoon's patrol vehicle documenting the majority of the interaction between Officer Yoon and Sapalasan.[57]

The United States introduced "overwhelming" evidence at trial regarding Sapalasan's guilt such that the Court may conclude the Jury would have reached the same result even absent consideration of the Search Warrant.[58] Even if jurors saw and considered the Search Warrant, the information contained in the Search Warrant could not conceivably have prejudiced Sapalasan, given the issues and evidence presented in the case.[59]

Accordingly, there is no reasonable possibility that the Search Warrant affected the verdict, and the presence of this extrinsic evidence in the jury room during deliberations does not warrant a new trial. Sapalasan's Motion is **DENIED**.

## V. CONCLUSION

For the foregoing reasons, Sapalasan's Motion for New Trial at Docket 252 is **DENIED.**

IT IS SO ORDERED.

Dated at Anchorage, Alaska, this 27th day of September, 2021.

/s/ *Timothy M. Burgess*
TIMOTHY M. BURGESS
UNITED STATES DISTRICT JUDGE

---

[57] Dkt. 257 at 8:12–10:11.

[58] *See Hughes*, 898 F.2d at 699.

[59] *Prime*, 431 F.3d at 1157–58; *cf. Vasquez*, 597 F.2d at 192, 194 (concluding that an "official court file" that improperly went with the jury into deliberations denied defendant due process of law where "the file contained information highly prejudicial to the [defendant] which had not been brought out in trial").